**UNITED STATES DISTRICT COURT**
**FOR SOUTHERN DISTRICT OF NEW YORK**

---

|  |  |  |
|---|---|---|
| In the Matter of the Application of BENZAQUEN, JANE, for an Order Pursuant to 28 U.S.C. § 1782 to Take Discovery, Pursuant to the Federal Rules of Civil Procedure | : : : : : : : : : | CASE No.: _____ |

---

*EX PARTE* **APPLICATION FOR DISCOVERY**
**IN AID OF FOREIGN LITIGATION PURSUANT TO 28 U.S.C. § 1782 AND**
**PETITIONER'S MEMORANDUM IN SUPPPORT THEREOF**

# **TABLE OF CONTENTS**

JURISDICTION AND VENUE ................................................................................................ 1

FACTUAL BACKGROUND ................................................................................................... 1

The Belgian Proceedings ....................................................................................................... 3

ARGUMENT ........................................................................................................................... 4

    I. *EX PARTE* RELIEF IS APPROPRIATE ...................................................................... 4

    II. THE SECTION 1782 STATUTORY REQUIREMENTS HAVE BEEN MET .................. 5

    III.  THE COURT SHOULD EXERCISE ITS DISCRETION AND PERMIT
           PETITIONER TO OBTAIN THE REQUESTED DISCOVERY ....................................... 7

        A.   Mt. Sinai Is Not a Party to the Belgian Proceedings........................................ 8

        B.   The Belgian Court Will Be Receptive to the Discovery................................... 9

        C.   The Request Does Not Conceal an Attempt to Circumvent Foreign Proof-
            Gathering Restrictions or Other Policies of a Foreign Country or the United States .. 11

        D.   The Discovery Requests Are Not Intrusive or Burdensome and Are Narrowly
            Tailored ..................................................................................................... 12

    IV. THE COURT SHOULD ISSUE THE PROPOSED PROTECTIVE ORDER ................. 14

CONCLUSION........................................................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf,*
  No. Civ. M19-88 (BSJ), 2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006)..............................9, 11

*Brandi-Dohrn v. IKB Deutsche Industriebank AG,*
  673 F.3d 76 (2d Cir. 2012)....................................................................................................11

*In re Chevron Corp.,*
  633 F.3d 153 (3d Cir. 2011)..................................................................................................10

*In re Chodiev,*
  2021 WL 6805646 (D.D.C. May 17, 2021) ...........................................................................10

*In re del Valle Ruiz,*
  939 F.3d 520 (2d Cir. 2019)....................................................................................................6

*In re Esses,*
  101 F.3d 873 (2d Cir. 1996)....................................................................................................5

*Euromepa S.A. v. R. Esmerian, Inc.,*
  51 F.3d 1095 (2d Cir. 1995).........................................................................................6, 8, 13

*In re Grynberg,*
  223 F.Supp.3d 197 (S.D.N.Y. 2017)....................................................................................6, 7

*In Re Guo,*
  965 F.3d 96 (2d Cir. 2020)......................................................................................................1

*Gushlak v. Gushlak,*
  486 F. App'x 215 (2d Cir. July 3, 2012)..............................................................................4, 5

*In re Hallmark Capital,*
  534 F. Supp. 2d at 952 ............................................................................................................9

*In re Heraeus Kulzer GmbH,*
  2015 WL 5613156 (N.D. Ind. Sept. 22, 2015......................................................................10

*In re Heraeus Kulzer GmbH,*
  No., 2017 WL 214322 (N.D. Ind. Jan. 18, 2017) .................................................................10

*Heraeus Kulzer, GmbH v. Biomet, Inc.,*
  633 F.3d 591 (7th Cir. 2011) ............................................................................................8, 12

*Heraeus Medical GmbH v. Biomet, Inc.*,
   2021 WL 4133710 (N.D. Ind. Sept. 10, 2021) ...............................................................10, 11

*In re Hornbeam Corp.*,
   No. 17-658-CV, 2018 WL 416486 (2d Cir. Jan. 16, 2018) .......................................................4

*Matter of Lufthansa Technik AG*,
   2019 WL 331839 (W.D. Wash. Jan. 25, 2019).........................................................................11

*Mees v. Buiter*,
   793 F.3d 291 (2d Cir. 2015 ..................................................................................................6, 7

*Metallgesellschaft AG v. Hodapp*,
   121 F.3d 77 (2d Cir. 1997)......................................................................................................13

*Minatec Fin. S.A.R.L. v. SI Grp. Inc.*,
   No. 1:08-cv-269, 2008 WL 3884374 (N.D.N.Y. Aug. 18, 2008)...............................................9

*In re O'Keefe*,
   650 F. App'x 83 (2d Cir. May 26, 2016) ...................................................................................4

*In re Sargeant*,
   278 F. Supp. 3d 814 (S.D.N.Y. 2017)........................................................................................6

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*,
   376 F.3d 79 (2d Cir. 2004)................................................................................................8, 14

## Statutes

28 U.S.C. § 1331.................................................................................................................................1

28 U.S.C. § 1391(b).............................................................................................................................1

28 U.S.C. § 1782..........................................................................................1, 1, 4, 5, 7, 8, 9, 10, 11, 12

28 U.S.C. § 1782: (1)........................................................................................................................14

28 U.S.C. § 1782 AND ......................................................................................................................1

Petitioner Jane Benzaquen ("Petitioner") makes this Application *ex parte* for an order pursuant to 28 U.S.C. § 1782 authorizing her attorneys to issue a subpoena, pursuant to Federal Rule of Civil Procedure 45, upon The Mount Sinai Health System ("Mt. Sinai"), compelling Mt. Sinai to produce documents for use in an ongoing case seeking to establish Petitioner's paternity currently pending in the courts of Belgium (the "Belgian Proceedings"). Petitioner's Application also serves as her memorandum of law in support thereof. To support her lawsuit in Belgium, Petitioner seeks documents from Mt. Sinai that provide medical information regarding the late King Hassan II of Morocco's treatment at Mt. Sinai's facility, including but not limited to, information related to his genetic information that is within the possession or control of Mt. Sinai or its affiliates. This information is critical to assist Petitioner in establishing King Hassan II's paternal status with respect to Petitioner.

## JURISDICTION AND VENUE

This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as this Application arises under federal law—specifically 28 U.S.C. § 1782. *See In Re Guo*, 965 F.3d 96, 102 (2d Cir. 2020) (holding that District Court has jurisdiction if "statutory preconditions [of § 1782] are met").

Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b) because Mt. Sinai is headquartered in New York, NY.

## FACTUAL BACKGROUND

Petitioner Jane Benzaquen is a dual citizen of Belgium and Israel. Petitioner was born in Casablanca, Morrocco on November 14, 1953. Petitioner eventually moved to Belgium before emigrating to Israel.

King Hassan II was the King of Morocco from 1961 to 1999, upon his death he was succeeded by his son, the current King of Morocco King Muhammed VI.

Mt. Sinai Hospital System, is a hospital system located in the state of New York with primary coverage of the New York City area. It is associated with the teaching hospital at the Ichan School of Medicine.

## Background of Paternity Suit

Petitioner's mother lived with her parents and siblings in Casablanca, Morrocco. The future King Hassan II, who was the crown prince of Morocco at the time, met Petitioner's aunt at a clothing boutique in which she worked. Thereafter, he was invited to the Benzaquen house and first met Petitioner's mother.

Petitioner's mother entered into a sexual relationship with King Hassan II, which ultimately resulted in her becoming pregnant with King Hassan II's child, Petitioner.

Upon learning of her pregnancy and the birth of Petitioner, on November 14, 1953, A few months after Petitioner's birth, Petitioner's mother and Petitioner fled to Belgium. After living in Belgium until the age of 18, Petitioner moved to Israel, where she got married and had children. A few years ago, Petitioner came back to Belgium, where she is currently living.

After King Hassan II's death in 1999, Petitioner told her children about the identity of their real father and decided to fight for her recognition. However, the Moroccan Royal Family has not acknowledged Petitioner as King Hassan II's child.

In addition to her desire to be recognized as the child of King Hassan II, it is increasingly important to understand one's genetic history. Genetic history often holds critical predictive information to one's potential medical issues. Petitioner's ability to confirm her real father's identity and to have access to his genetic information may prove critical for Petitioner's future medical treatments, as well as those of her descendants.

Therefore, Petitioner had no choice but to initiate legal proceedings for her to finally and officially be known and be recognized as the daughter of her biological father, King Hassan II.

### The Belgian Proceedings

On September 15, 2022, Petitioner initiated a claim in the 20th Family Chamber of the Court of First Instance of Walloon Brabant, Nivelles Division in Nivelles, Belgium (the "Belgian Court") seeking to definitively establish King Hassan II's paternity (the "Belgian Proceedings").[1]

The Belgian Proceedings are currently in the pre-trial stage, which allows for the exchange of various submissions between the parties, including with respect to discovery and legal briefing. The parties are currently awaiting a potential deadline to verify compliance with the required discovery obligations.  Exhibit C, Certification & Attestation of Nathalie Uyttendaele dated August 27, 2025, at 1 ("Uyttendaele Aff.").

As King Hassan II died in 1999, the ability to test his DNA is severely limited.  Indeed, the only viable method for testing King Hassan II's DNA would be to utilize information that is maintained at hospitals where he was previously treated.

As Petitioner is a Belgian citizen, she has sought to establish paternity in Belgium per the requirements established in Paragraph 2, Article 324 of the Belgian Civil Code, which states in relevant part "paternal filiation may be proven by any means of law." (Uyttendaele Aff. at 2.)

King Hassan II received medical treatment at several American hospitals, including Mt. Sinai before his death in 1999.  Upon information and belief, he did not obtain any relevant medical treatment in Belgium that would provide sufficient information to support Petitioner's paternity claim.

---

[1] Case Ref. R.G. 2022/A/991

Given the lack of information available in Belgium, the Belgian Court is reliant upon information obtained from non-Belgian sources, including the United States, to adequately prosecute Petitioner's claims.

On information and belief, King Hassan II was a patient of Mt. Sinai at several points during the 1990s before his death, and Mt. Sinai would have maintained records relating to his treatment that would be of critical importance to establishing Petitioner's paternity.

## ARGUMENT

The Court should grant this Application so that Petitioner can obtain the documents necessary to assist the Belgian Court in establishing her paternity in the Belgian Proceedings. Petitioner seeks all documents in the possession of Mt. Sinai related to the treatment of King Hassan II of Morocco. This request includes, but is not limited to, all genetic material, DNA, test results, or other biological data held in Mt. Sinai's or its affiliates' possession or control. A copy of the Subpoena that Petitioner seeks to issue to Mayo is attached as Exhibit B to this Application (the "Subpoena"). The following sets forth the grounds for the Court to grant this Application on an *ex parte* basis, this Application's satisfaction of the statutory requirements of 28 U.S.C. § 1782 and the Court's discretionary factors, and to issue an appropriate protective order.

## I. *EX PARTE* RELIEF IS APPROPRIATE

Discovery sought pursuant to 28 U.S.C. § 1782 may be authorized on an *ex parte* basis. *See, e.g.*, *Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. July 3, 2012) ("(I)t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*."); *In re Hornbeam Corp.*, No. 17-658-CV, 2018 WL 416486, at *2 (2d Cir. Jan. 16, 2018) (same); *see also In re O'Keefe*, 650 F. App'x 83, 85 (2d Cir. May 26, 2016) (rejecting argument that it was improper to bring application *ex parte*). If the subpoena is issued, Mt. Sinai will have

the opportunity to object and/or move to quash the subpoena. *Gushlak*, 486 F. App'x at 217 (citing Fed. R. Civ. P. 45(c)(3)). Therefore, *ex parte* relief is justified.

## II. THE SECTION 1782 STATUTORY REQUIREMENTS HAVE BEEN MET

28 U.S.C. § 1782 authorizes this Court to order any person found in or a resident of the Southern District of New York to give testimony or produce documents for use in a foreign proceeding upon the application of any person with an interest in that proceeding. Specifically, Section 1782(a) provides, in relevant part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced . . . To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

"Section 1782 applicants must meet certain statutory requirements: (1) the person from whom discovery is sought must reside or be found in the district in which the application was made, (2) the discovery must be for use in a foreign proceeding before a foreign tribunal, and (3) the applicant must be either a foreign tribunal or an interested person." *See*, *In re Esses,* 101 F.3d 873, 878 (2d Cir. 1996). This application easily satisfies each of these requirements.

*First*, Mt. Sinai resides in this District because it is headquartered in New York, New York. On its official website, Mt. Sinai lists its main address as One Gustave L. Levy Place, 99th Street and 5th, New York, New York 10029.[2] Upon information and belief, the documents that Petitioner

---

[2] Contact Us - The Mount Sinai Hospital | Mount Sinai - New York,
<https://www.mountsinai.org/about/access/contact> (Last Visited, November 5, 2025).

seeks are either located in New York, or are within Mt. Sinai's possession, custody, or control, as those terms are defined in Federal Rule of Civil Procedure 34.

*Second*, the documents that Petitioner seeks from Mt. Sinai are highly relevant to, and will be used to assist Petitioner in, the Belgian Proceedings. All of the documents sought relate to Petitioner's ability to prove King Hassan II's paternity in relation to her.

The Belgian Proceedings are ongoing in the Belgian Court. Courts in the Second Circuit have repeatedly held that an ongoing foreign civil action satisfies the statutory requirement that there is a foreign proceeding. *See*, *In re del Valle Ruiz,* 939 F.3d 520, 534 (2d Cir. 2019); *In re Sargeant*, 278 F. Supp. 3d 814, 822 (S.D.N.Y. 2017); *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1099 (2d Cir. 1995).

The discovery sought by Petitioner includes documents relevant to its allegations of paternity in the Belgian Proceedings. It is incontrovertible that the discovery sought will help Petitioner demonstrate her biological relationship to King Hassan II. Such topics are of core relevance to a paternity action in the United States, Belgium, or any other country. Therefore, the documents are for use in, and directly relevant to, the proceeding pending in Belgium. *In re Sargeant*, 278 F. Supp. 3d at 822 ("(A)n applicant can use § 1782 to seek discovery of any materials that can be made use of in the foreign proceeding to increase the chances of success."); *In re Grynberg*, 223 F.Supp.3d 197, 200–01 (S.D.N.Y. 2017) (same); *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015) ("Notably, § 1782 makes no mention of necessity, and in several other contexts (the Second Circuit) and the Supreme Court have declined to read into the statute requirements that are not rooted in its text.").

*Third*, Petitioner is an interested person within the meaning of the statute because she is the plaintiff in the Belgian Proceedings, in which she seeks to use the requested discovery. *See*

*Intel*, 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested person(s)' who may invoke § 1782").

## III.  THE COURT SHOULD EXERCISE ITS DISCRETION AND PERMIT PETITIONER TO OBTAIN THE REQUESTED DISCOVERY

Once the three statutory factors are satisfied, the district court should determine, in its discretion, whether to order the requested discovery. *See Intel*, 542 U.S. at 264.

In *Intel*, the Supreme Court identified four factors for the Court to consider in determining when or to what extent discovery is permissible under Section 1782. The four factors are: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding" such that the "foreign tribunal has jurisdiction over (it);" (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court juridical assistance;" (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States;" and (4) whether the requests are "unduly intrusive or burdensome" and if so, whether those requests can be "trimmed." *Id.* at 264-65; *see also Mees*, 793 F.3d at 298.

In addition to these factors, the Court should also consider the overarching principles of Section 1782. As the Supreme Court has explained, "Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel*, 542 U.S. at 247. While the legislation has undergone several amendments, these amendments have consistently provided more, not less, discovery for use in more, not fewer, judicial and quasi-judicial forums in connection with more, not fewer, types of proceedings. *See id.* at 248-49. Indeed, as the Seventh Circuit has explained in a reversing a district

court's denial of a Section 1782 application seeking documents for use in a German proceeding, "a party to litigation in a foreign country can seek discovery relating to that litigation in a federal district court, and, in the discretion of that court, can obtain as much discovery as it could if the lawsuit had been brought in that court rather than abroad." *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 594 (7th Cir. 2011) (internal citations omitted).

Section 1782 has two aims that guide the district court's discretion: "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts(.)" *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83 (2d Cir. 2004) (quotation omitted).

To that end, "Congress intended . . . that 28 U.S.C. § 1782 would provide an avenue for judicial assistance to foreign or international tribunals whether or not reciprocal arrangements existed. . . . (Section 1782) is a one-way street." *Application of Malev Hungarian Airlines*, 964 F.2d 97, 101 (2d Cir. 1992) (quotation omitted). "Absent specific directions to the contrary from a foreign forum, the statute's underlying policy should generally prompt district courts to provide some form of discovery assistance." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1102 (2d Cir. 1995). Indeed, if a court fails to consider this backdrop, it risks abusing its discretion. *Malev*, 964 F.2d at 101-02.

Applying these factors and considering the overarching principles behind the statute, this Court should permit Petitioner to obtain the requested discovery.

**A. Mt. Sinai Is Not a Party to the Belgian Proceedings**

The first *Intel* factor considers whether the respondent is a participant in the foreign proceeding because when a respondent is a party, "the need for § 1782(a) aid generally is not as

apparent as it ordinarily is when the evidence is sought from a nonparticipant in the matter arising abroad." *Intel*, 542 U.S. at 264.

Mt. Sinai is not a party to the ongoing Belgian Proceedings. (Uyttendaele Aff. at 1.)   As the *Intel* Court explained, this fact demonstrates why Petitioner needs Section 1782 aid.  *See Intel,* 542 U.S. at 264 ("nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid.").   As noted above, Mt. Sinai certainly possesses medical information relevant to elements of Petitioner's paternity claim against King Hassan II.  The evidence is crucial to Petitioner's claims in the Belgian Proceedings and the material sought is not within the foreign tribunal's reach because Mt. Sinai is not a party and because, upon information and belief, Mt. Sinai does not have sufficient presence in Belgium to trigger Belgian jurisdiction.  Uyttendaele Aff. at 2.  This weighs in favor of granting the application.  *See In re Hallmark Capital*, 534 F. Supp. 2d at 952 (citing *In re Application of Euromepa*, 51 F.3d 1095, 1097, 1101 (2d Cir. 1996)).

**B.  The Belgian Court Will Be Receptive to the Discovery**

The second *Intel* factor considers the nature of the foreign tribunal and its receptiveness to the requested discovery.  This factor weighs in favor of granting the petition unless there is authoritative proof that a foreign tribunal would reject evidence obtained through a Section 1782 proceeding. *See Minatec Fin. S.A.R.L. v. SI Grp. Inc.*, No. 1:08-cv-269 (LEK/RFT), 2008 WL 3884374, at *6-7 (N.D.N.Y. Aug. 18, 2008) (granting discovery request in absence of "neither any rejection nor offense taken by the German tribunals" to the discovery and finding this factor favors applicant); *cf. In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, No. Civ. M19-88 (BSJ), 2006 WL 3844464, at *6 (S.D.N.Y. Dec. 29, 2006) ("(P)roof resting on equivocal interpretations of foreign policy or law generally provides an insufficient basis to deny

discovery"). The party opposing discovery under section 1782 has the burden of proof, demonstrating offense to the foreign jurisdiction. *In re Chevron Corp.*, 633 F.3d 153, 162 (3d Cir. 2011) (citing *In re Bayer AG*, 146 F.3d 188, 190 (3d Cir. 1998)).  There is no such proof in this case.

Belgian courts are receptive to the type of evidence that Petitioner requests, Uyttendaele Aff. at 2, a fact that U.S. courts routinely recognize when analyzing this factor in granting such petitions. *See, e.g., Heraeus Medical GmbH v. Biomet, Inc.*, 2021 WL 4133710, at *6 (N.D. Ind. Sept. 10, 2021) (granting request for § 1782 petition in Belgium noting that Belgian "tribunals would accept evidence produce pursuant to [§ 1782]"); *In re Republic of Kazakhstan for an Order Directing Discovery from Wells Fargo Bank Nat'l Assoc. pursuant to 28 U.S.C. § 1782*, 2021 WL 3561364, at *2 (D. Minn Aug. 12, 2021) (granting 1782 discovery for use in a Belgian court proceeding); *In re Chodiev*, 2021 WL 6805646, at *9 (D.D.C. May 17, 2021) (finding that Belgian courts would be receptive to § 1782 discovery).

Indeed, evidence obtained pursuant to Section 1782 has been decisive in foreign proceedings. *See, e.g.*, *In re Heraeus Kulzer GmbH*, No., 2017 WL 214322, at *1 (N.D. Ind. Jan. 18, 2017) (noting that a foreign court "relied on" documents obtained pursuant to Section 1782 in reaching its judgment); *see also*, *In re Heraeus Kulzer GmbH*, 2015 WL 5613156, at *1 (N.D. Ind. Sept. 22, 2015) (noting that a foreign judgment "quotes extensively from the cited documents," all of which were produced pursuant to a Section 1782 petition).

In Petitioner's case, there is no direction from the Belgian Court that it will not accept the requested discovery. (Uyttendaele Aff. at 2.)  Indeed, under Belgian law, a Petitioner seeking to establish paternity is entitled to use "any means of law" to establish his/her paternity. *Id*.  Belgian courts are receptive to foreign discovery, and indeed, the Belgian Judicial Code specifically

contemplates the use of information obtained outside Belgium. "Where there are serious and precise indications that a party or a third party holds a document containing proof of a relevant fact, the judge may order that this document, or a copy thereof certified true, be filed in the case record. *Id*. (quoting Article 877 of the Belgian Judicial Code). Accordingly, there is an established mechanism under Belgian law for the Belgian Court to accept and utilize discovery obtained from foreign sources, such as the type Petitioner is requesting here. Thus, the discovery that Petitioner seeks is relevant to determining King Hassan II's paternity in the Belgian Proceedings. *See, Matter of Lufthansa Technik AG*, 2019 WL 331839, at *3 (W.D. Wash. Jan. 25, 2019) (finding that the second *Intel* factor favored petitioner, where petitioner's claims in Germany were ripe and being actively pursued.).

### C. The Request Does Not Conceal an Attempt to Circumvent Foreign Proof-Gathering Restrictions or Other Policies of a Foreign Country or the United States

The third *Intel* factor considers whether the Section 1782 petition is being used to circumvent foreign proof-gathering restrictions. *Intel*, 542 U.S. at 264-65. Some courts have interpreted this discretionary factor as an inquiry into the petitioner's good faith. *Gemeinshcaftspraxis*, 2006 WL 3844464, at *7. Petitioner's request here is made in good faith and not for purposes of harassment. *See Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 81 (2d Cir. 2012).

Petitioner's application does not conceal an attempt to circumvent Belgian proof-gathering restrictions or other policies of Belgium or the United States because there are no such restrictions in Belgium. Belgium does not have proof-gathering restrictions and is generally receptive to receiving documents without regard to their origin. (Uyttendaele Aff. at 2); *See Heraeus Med. GmbH v. Biomet, Inc.*, 2021 WL 4133710, at *6 (N.D. Ind. Sept. 10, 2021) (granting § 1782

application because Petitioners had demonstrated that courts in Belgium "would accept evidence produced pursuant to 28 U.S.C. § 1782").

Even if the discovery Petitioner seeks was unavailable under Belgian procedure, that would not provide a basis to deny Petitioner's application. *See, Cryolife,* 2009 WL 88348, *3-4 (granting discovery related to patent infringement action pending in Germany); *Heraeus Kulzer v. Biomet, Inc.*, 633 F.3d 591, 597 (reversing denial of discovery because comparable discovery could not be obtained using German procedures and nothing suggested the German court wouldn't accept the discovery).

Further, Article 877 of the Belgian Judicial Code provides that petitions may be filed outside of Germany to seek evidence from foreign countries. (Uyttendaele Aff. at 2.)  The third *Intel* factor thus weighs in favor of granting Petitioner's request.

### D. The Discovery Requests Are Not Intrusive or Burdensome and Are Narrowly Tailored

Courts may consider whether the discovery requests under Section 1782 are "unduly intrusive or burdensome" and should be "rejected or trimmed." *Intel*, 542 U.S. at 265.

The discovery sought by Petitioner is narrowly tailored and directly relevant to Petitioner's claims in the Belgian Proceedings.  Given that the Belgian Proceedings are sophisticated civil complaints, Petitioner's requests are narrowly tailored to seek information regarding only the medical information necessary to establish King Hassan II's paternity as to Petitioner.  Petitioner requests information that discloses relevant medical information pertaining to King Hassan II's treatment at Mt. Sinai.  Any such medical information, whether from the United States or abroad, is relevant to allowing Petitioner to determine King Hassan II's paternity as to Petitioner.  To these

ends, Petitioner seeks the documents identified in the proposed subpoena attached hereto as Ex. A.

Mt. Sinai cannot plausibly claim any actual burden caused by compliance with the subpoena. The documents and records that Petitioner seeks in this Petition are of the type that are readily maintained in the regular course of business for a hospital system and are easily identifiable by patient name. Mt. Sinai would only be required to locate these records and copy them for production.

If the discovery requests are for some reason considered to be overly broad, the proper course of action is to modify the subpoena, rather than quashing it outright:

> (R)ecently, we have made the point that although American-style discovery for one party may skew foreign litigation, "it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright."

*Metallgesellschaft AG v. Hodapp*, 121 F.3d 77, 80 (2d Cir. 1997) (quoting *Euromepa*, 51 F.3d at 1101); *see also*, Metallgesellschaft, 121 F.3d at 78 ("We agree . . . that the district court abused its discretion in refusing discovery."); *Euromepa*, 51 F.3d at 1101 ("because section 1782 gives the court complete discretion in prescribing the procedure for parties to follow in producing requested materials, we think that it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright" (quotation and internal citation omitted)).

Petitioner stands ready and willing to cooperate with Mt. Sinai in the event that Mt. Sinai can identify any legitimate concerns about the burden that this subpoena may create.

The fourth *Intel* factor thus weighs in favor of granting the instant application.

13

## IV. THE COURT SHOULD ISSUE THE PROPOSED PROTECTIVE ORDER

A Proposed Protective Order is attached to this Application as Exhibit B.  Given the highly sensitive and confidential nature of the information sought by this Petition, it would be in the best interest of all parties and interested non-parties to issue a protective order covering the materials produced in response to this subpoena.

## CONCLUSION

This Court should exercise its discretion in favor of Petitioner to effectuate the twin aims of 28 U.S.C. § 1782: (1) "providing efficient means of assistance to participants in international litigation in our federal courts"; and (2) "encouraging foreign countries by example to provide similar means of assistance to our courts." *Schmitz*, 376 F.3d at 84 (quotation omitted).

Petitioner respectfully requests this Court to consider her petition promptly to ensure that responsive discovery is obtained in sufficient time to be of use in the Belgian Proceedings. Petitioner further requests that the Court issue an order authorizing the initiation of discovery and issue a subpoena on Mt. Sinai, in substantially the same form as concurrently filed with this Application.

Dated: November 7, 2025

Respectfully Submitted,

JANE BENZAQUEN

By:*/s/ Steven B. Malech*
Steven B. Malech
Michael J. Kasdan
Wiggin and Dana LLP
437 Madison Avenue
35th Floor
New York, NY 10022
T: 212-551-2633
smalech@wiggin.com
mkasdan@wiggin.com

14