UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In the Matter of the Application of<br><br>JANE BENZAQUEN,<br><br>Application for an Order Pursuant to 28 U.S.C. § 1782 to Take Discovery, Pursuant to the Federal Rules of Civil Procedure. | 25 Misc. 501 (JPC)<br><br><u>OPINION AND ORDER</u> |

JOHN P. CRONAN, United States District Judge:

On November 7, 2025, Jane Benzaquen filed an *ex parte* application pursuant to 28 U.S.C. § 1782 (the "Application"), seeking authorization to serve a subpoena on the Mount Sinai Health System ("Mount Sinai") for medical records, including genetic information, of the late King Hassan II of Morocco for use in paternity proceedings she commenced in Belgium. The Kingdom of Morocco (the "Kingdom") subsequently moved to intervene as of right pursuant to Federal Rule of Civil Procedure 24(a)(2), or, in the alternative, for permissive intervention pursuant to Rule 24(b). The Court authorizes the Kingdom's permissive intervention under Rule 24(b), and therefore does not reach the question of intervention as of right.

## I. Background

On November 7, 2025, Benzaquen commenced this proceeding by filing her Application, Dkt. 1 ("Appl."), along with a proposed subpoena to Mount Sinai, Dkt. 1-1; a proposed protective order, Dkt. 1-2; a certification and attestation by Nathalie Uyttendaele, a Belgian attorney, concerning Benzaquen's ongoing paternity proceedings in Belgium, Dkt. 1-3; and a proposed order granting the Application, Dkt. 1-4. Shortly thereafter, on November 12, 2025, the Kingdom filed a letter in anticipation of its motion to intervene, Dkt. 5, and, on November 18, 2025,

Benzaquen filed a letter in response, Dkt. 6. At a November 24, 2025 conference, the Court set a briefing schedule for the Kingdom's anticipated motion. *See* Minute Entry, Nov. 24, 2025; Dkt. 7. On December 5, 2025, the Kingdom filed its motion, Dkts. 8, 9 ("Motion"), supported by a declaration from Stanislas Eskenazi, the Kingdom's counsel in the Belgian proceedings, Dkt. 10, and a declaration from Driss Dahak, a former Moroccan civil servant and diplomat who had previously served as the General Secretary of the Kingdom and the President of the Kingdom's Supreme Court, Dkt. 11 ("Dahak Decl."). On December 22, 2025, Benzaquen filed a brief opposing the motion, Dkt. 16 ("Opposition"), along with an affidavit from Nathalie Uyttendaele, Dkt. 16-1, and an affidavit from Julien Uyttendaele, who is counsel for Benzaquen in the Belgian proceedings, Dkt. 16-2. On January 12, 2026, the Kingdom filed a reply brief in support of its motion, Dkt. 18 ("Reply"), along with a second declaration from Eskenazi, Dkt. 19.[1]

In addition to the instant case, Benzaquen has filed two other Section 1782 applications to subpoena King Hassan II's records from hospital systems in the United States. Benzaquen filed an application in this District to serve a subpoena on the New York-Presbyterian Healthcare System, *see In the Matter of the Application of Jane Benzaquen, for an Order Pursuant to 28*

[1] Along with its reply papers, the Kingdom also filed a declaration from Jean-François Van Drooghenbroeck, another counsel for the Kingdom in the Belgian proceedings. Dkt. 20. On January 28, 2026, Benzaquen filed a letter arguing that Van Drooghenbroeck's declaration "does not purport to reply to anything in" Benzaquen's opposition to intervention, the Kingdom has not "explained why it failed to submit this declaration" with its motion, the declaration raises new arguments in reply, and those arguments are irrelevant to resolving the intervention motion. Dkt. 24 at 1-2. Benzaquen therefore asks the Court to disregard Van Drooghenbroeck's declaration or, alternatively, for permission to file a responsive declaration from Nathalie Uyttendaele. *Id.* at 2. While the Kingdom responded to this letter and other letters from Benzaquen, it merely argues that Benzaquen is "inappropriate[ly] attempt[ing] to prolong and expand these proceedings beyond any legitimate purpose . . . and to distract from the core dispositive facts," yet offers no defense of Van Drooghenbroeck's declaration, including why the Kingdom failed to file the declaration with its moving papers. Dkt. 28. The Court therefore grants Benzaquen's request to strike Van Drooghenbroeck's declaration and does not consider that filing in resolving the Kingdom's motion to intervene.

*U.S.C. § 1782 to Take Discovery, Pursuant to the Federal Rules of Civil Procedure* ("*Benzaquen II*"), 25 Misc. 506 (JPC) (S.D.N.Y.), which also is pending before the undersigned. Benzaquen's third application was filed in the District of Minnesota and sought to serve a subpoena on the Mayo Clinic and Mayo Foundation for Medical Education and Research. *See In re Application for Order Pursuant to 28 U.S.C. § 1782 of Jane Benzaquen* ("*Benzaquen III*"), 25 Misc. 73 (DTS) (D. Minn.). Benzaquen voluntarily dismissed *Benzaquen III* without prejudice on February 27, 2026. 25 Misc. 73 (DTS), Dkt. 38 (D. Minn. Feb. 27, 2026).[2]

## II. Legal Standard

Intervention is "a procedural device that attempts to accommodate two competing policies: efficiently administrating legal disputes by resolving all related issues in one lawsuit, on the one hand, and keeping a single lawsuit from becoming unnecessarily complex, unwieldy or prolonged, on the other hand." *Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014) (per curiam) (internal quotation marks omitted). Federal Rule of Civil Procedure 24 "strikes this balance by providing potential intervenors with two ways to intervene: intervention as of right under Rule 24(a) and permissive intervention under Rule 24(b)." *Cont'l Indem. Co. v. Bulson Mgmt., LLC*, No. 20 Civ. 3479 (JMF), 2020 WL 6586156, at *2 (S.D.N.Y. Nov. 10, 2020).

Rule 24(a)(2) provides that a court must grant intervention to anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Thus, to intervene

[2] In response to further letters from both parties, Dkts. 23, 25, 28, the Court held a hearing and ordered Mount Sinai and New York-Presbyterian Health System to advise whether they possess records that would be responsive to Benzaquen's proposed subpoenas. Dkt. 31; *see Benzaquen II*, No. 25 Misc. 506 (JPC), Dkt. 33 (S.D.N.Y. Feb. 13, 2026). Neither health system responded to that Order.

as of right pursuant to Rule 24(a)(2), "a movant must '(1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action.'" *In re N.Y.C. Policing During Summer 2020 Demonstrations*, 27 F.4th 792, 799 (2d Cir. 2022) (quoting *"R" Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 240 (2d Cir. 2006)). "Failure to meet any one of these requirements suffices for a denial of the motion." *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 197-98 (2d Cir. 2000).

Rule 24(b) "provides that, on timely motion, intervention may be permitted to anyone who 'has a claim or defense that shares with the main action a common question of law or fact.'" *Eddystone Rail Co., LLC v. Jamex Transfer Servs., LLC*, 289 F. Supp. 3d 582, 595 (S.D.N.Y. 2018) (quoting Fed. R. Civ. P. 24(b)(1)(B)). "[C]ourts have noted that the words claim or defense in permissive intervention are not to be read in a technical sense but rather should be read to require *some interest* in the subject matter of the litigation." *Red Rock Sourcing LLC v. JGX, LLC*, No. 21 Civ. 1054 (JPC), 2023 WL 1468980, at *4 (S.D.N.Y. Feb. 2, 2023) (citation modified). District courts have "broad discretion" in determining whether to grant a motion for permissive intervention. *AT&T Corp. v. Sprint Corp.*, 407 F.3d 560, 561 (2d Cir. 2005). "In exercising its discretion, the court must consider whether intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). "[C]ourts consider 'substantially the same factors' under Rule 24(b) as they do under Rule 24(a)," *Cont'l Indem.*, 2020 WL 6586156, at *3 (quoting *"R" Best Produce*, 467 F.3d at 240), but they "conduct a holistic review of the totality of circumstances when assessing permissive intervention" "[i]n contrast to the more stringent test for mandatory intervention," *Red Rock Sourcing*, 2023 WL 1468980, at *4.

## III. Discussion

The Kingdom argues that it has the right to intervene under Rule 24(a)(2), or, in the alternative, that it should be permitted to intervene under Rule 24(b). Motion at 2. Because the Court finds that permissive intervention under Rule 24(b) is warranted, the Court does not reach whether the Kingdom satisfies the factors to require intervention under Rule 24(a)(2).

First, the Kingdom's motion is timely. The Kingdom submitted a pre-motion letter expressing its intent to file a motion to intervene on November 12, 2025, Dkt. 5, only the second business day after Benzaquen filed her Application on November 7, 2025, Dkt. 1. *See generally* Opposition (not disputing the timeliness of the Kingdom's motion).

Second, the Kingdom's sovereign interests in the records sought satisfy the interest requirement for permissive intervention.[3] The Kingdom points to its "interest in preserving and protecting the private and confidential medical records of the former Head of State." Motion at 8. The Kingdom explains that, as the former King of Morocco, King Hassan II held multiple important roles within the Moroccan government. *Id.* (citing Dahak Decl. ¶ 10); *see* Dahak Decl. ¶ 10 ("His Majesty the King is the Head of State, its Supreme Representative, the Symbol of the Nation's unity, and the Guarantor of the State's permanence and continuity. His Majesty the King is also the Guarantor of the country's independence and of the territorial integrity of the Kingdom within its authentic borders; Supreme Commander of the Royal Armed Forces; and Commander of the Faithful . . . , ensuring respect for Islam and guaranteeing the free exercise of worship."). The Kingdom is concerned with "preserving and safeguarding [King Hassan II's medical records]

---

[3] The Kingdom argues that it further satisfies the interest requirement "as a participant in the Belgian proceedings." Motion at 9-10. Because the Court finds that the Kingdom's sovereign interests as discussed herein are sufficient for purposes of permissive intervention, it declines to consider whether the Kingdom also has an interest based on its purported participation in the Belgian proceedings.

and controlling the timing and context of any dissemination of state records." Motion at 8. Otherwise, the Kingdom fears, "the public's trust in the Kingdom and the image and dignity of the Head of State" could be threatened. *Id.* at 9. Benzaquen urges the Court to reject these "sovereign interests" as not legally protectable. Opposition at 9-20.

"For an interest to be cognizable by Rule 24(a)(2), it must be 'direct, substantial, and legally protectable.'" *Bridgeport Guardians, Inc. v. Delmonte*, 602 F.3d 469, 473 (2d Cir. 2010) (quoting *Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990)). "An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." *Wash. Elec. Coop.*, 922 F.2d at 97. Benzaquen maintains that the Kingdom does not have a legally protectable interest for two reasons. First, according to Benzaquen, the Kingdom lacks a property interest in the records, which belong to Mount Sinai, King Hassan II himself, or his "close relatives"—not to the Kingdom. Opposition at 10-13. Second, Benzaquen argues that the Kingdom cannot assert sovereign interests, which are narrowly cabined into categories not implicated here. *Id.* at 16 (citing *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 601 (1982)); *id.* at 24.

While this argument may have some force under the stringent test for mandatory intervention under Rule 24(a), permissive intervention imposes no such rigid lines. *Cf., e.g.*, *Olympus Corp. v. United States*, 627 F. Supp. 911, 916 (S.D.N.Y. 1985) (finding that a proposed intervenor's interest in the litigation "weigh[ed] heavily in favor of permissive intervention" even though it was "too contingent to justify intervention as of right"). Under Rule 24(b), the Court "may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact," Fed. R. Civ. P. 24(b)(1)(B), which requires the movant to show

"'*some interest*' in the subject matter of the litigation," *Red Rock Sourcing*, 2023 WL 1468980, at *4 (citation omitted); *see SEC v. U.S. Realty & Improvement Co.*, 310 U.S. 434, 459 (1940) (observing that Rule 24 "plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation"). Under Rule 24(b)'s less "stringent" and "more holistic" standard, *Red Rock Sourcing*, 2023 WL 1468980, at *4, the Kingdom has articulated "some interest" in the medical records of its former head of state which are sought for use in an ongoing paternity litigation, as well as in who receives access to those records.

The Kingdom also maintains that its interests would be impaired absent intervention and that Mount Sinai cannot adequately represent those interests. Motion at 10-12. Benzaquen responds that Mount Sinai, like the Kingdom, has an interest in "protect[ing] confidential information from unauthorized disclosure," and that Mount Sinai effectuates this interest by "ensuring lawful compliance with HIPAA and [its] own policies and procedures related to the retention of medical records." Opposition at 23 (citation modified). But Mount Sinai, as a healthcare system in the United States, is focused on compliance with domestic health care laws, has no knowledge of—or direct interest in—the Belgian proceedings, and has no incentive to advocate for the Kingdom's sovereign interests. Because Mount Sinai therefore is unlikely to adequately represent those interests, inadequacy counsels towards intervention. *See Ass'n of Conn. Lobbyists LLC v. Garfield*, 241 F.R.D. 100, 103 (D. Conn. 2007) (finding that the intervenors' interests may not be adequately represented by the respondent, even if their "ultimate objective" is similar, because "the parties' primary motivations for achieving their objective diverge"). *But cf. United States v. Columbia Pictures Indus., Inc.*, 88 F.R.D. 186, 189 (S.D.N.Y. 1980) (characterizing inadequacy as "a minor factor at most" under Rule 24(b)(2)).

Finally, Benzaquen argues that the Kingdom has "injected collateral issues into this action," by adding "extraneous and irrelevant information" about a criminal complaint that the Kingdom had filed against Benzaquen in Belgium and questioning her motives in bringing the paternity proceedings, Opposition at 26-27, and suggests that intervention would cause "undue distraction, delay, and prejudice to the parties and to the Court," *id.* at 26 (quoting *Rodriguez v. Pataki*, 211 F.R.D. 215, 219 (S.D.N.Y. 2002)). The Kingdom's motion has not injected irrelevant, collateral issues into this case; rather, its briefing has addressed the foreign judicial proceedings underlying the Application. In fact, because of its involvement in those Belgian proceedings, the Kingdom is well-equipped to make a "significant contribution to the full development of the underlying factual issues in the suit." *Red Rock Sourcing*, 2023 WL 1468980, at *5 (quoting *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 192 (2d Cir. 1978)) (citation modified).

In sum, the Court finds that the Kingdom's motion is timely; the Kingdom's sovereign interests concern common questions of law and fact with the Application including with respect to access to King Hassan II's medical records which are sought for use in the underlying foreign proceedings; the Kingdom's interests would be inadequately represented by Mount Sinai and likely would be impaired absent intervention; and the Kingdom is likely to contribute to the development of the underlying factual issues in this action. Having considered the relevant factors under Rule 24(b) and conducted a holistic review of the totality of the circumstances, the Court finds permissive intervention to be appropriate.

## IV. Conclusion

Accordingly, the Court grants the Kingdom's motion to intervene pursuant to Rule 24(b). The Kingdom shall file any objection to Benzaquen's Application within fourteen days of this Opinion and Order, and Benzaquen may file a reply within seven days of the Kingdom's

opposition. The Clerk of Court is respectfully directed to close the motions at Docket Numbers 8 and 24.

SO ORDERED.

Dated: October 27, 2026
New York, New York

JOHN P. CRONAN
United States District Judge